UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 13-062-DCR-1 |
| V. | ) ) | |
| ROBERT ALLEN WALTERS, | ) ) | **MEMORANDUM ORDER AND OPINION** |
| Defendant. | ) | |

*** *** *** ***

Defendant Robert Walters pleaded guilty to conspiring to distribute and unlawfully possessing oxycodone, laundering drug proceeds, and being a felon in possession of a firearm. [Record No. 380] On June 24, 2014, He was sentenced to a total term of 240 months' imprisonment, to be followed by a six year term of supervised release. [Record No. 380] Walters recently filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), citing his deteriorating health caused by a variety of medical issues as well as inadequate medical care by Bureau of Prisons officials. [Record No. 505] The motion will be denied because Walters fails to present any extraordinary and compelling justification for reducing his sentence. Further, the relevant factors of 18 U.S.C. § 3553(a) do not support the relief requested.

**I.   Background**

Count One of the indictment charged Walters with conspiring to distribute oxycodone, a Schedule II controlled substance in violation of 21 U.S.C §§ 841(a)(1) and 846. Count Two charged Walters with money laundering involving the proceeds from the unlawful distribution

-1-

of controlled substances in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h). Count Six charged Walters with possessing oxycodone with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) while and Count Seven charged him with possessing a firearm following a felony conviction in violation of 18 U.S.C. § 922(g)(1). On February 18, 2014, Walters entered a plea agreement with the United States, acknowledging his guilt to these charges.

Walters is fifty-nine years old, and his projected release date is October 18, 2029.[1] He is currently located at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute") [Record No. 507] Walters has accrued good-time credit of approximately 15 months, and, therefore, will be credited for service of approximately 143 months' incarceration. *See* Record No. 509 (Sentence Monitoring Computation Data).

## II. Legal Standard

After fully exhausting all administrative remedies, a prisoner seeking compassionate release must show: (1) extraordinary and compelling circumstances warrant a sentence reduction; (2) a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable; and (3) such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission ("Sentencing Commission"). *See United States v. Jones*, 980 F.3d 1098, 1107-8, 1111 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A) (amended 2018)). Prior to enactment of the First Step Act of 2018, only the United States Bureau of Prisons ("BOP") could request compassionate release on a defendant's

---

[1] Federal Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc/ (last accessed Dec. 30, 2023).

behalf. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (citing § 3582(c)(1)(A) (2002)). The First Step Act, however, eliminated this gatekeeping role and allowed prisoners to move for relief when the BOP declined to act. [*Id.*]

The Sentencing Commission recently adopted a policy statement that applies when a defendant (as opposed to the BOP) files a motion for compassionate release. Amendment 814 to the United States Sentencing Guidelines directs a broader consideration of medical circumstances, such as the need for long-term care while in custody. *See* U.S.S.G. Amend. 814, eff. Nov. 1, 2023. Accordingly, the Court considers whether the defendant has identified extraordinary and compelling reasons for a sentence reduction, whether the § 3553(a) factors support granting the relief sought by the defendant, and whether a reduction is supported by the recent policy statement. [*Id.*]

### III. Extraordinary and Compelling Circumstances

Walters asserts raise eight "extraordinary and compelling" reasons meriting a sentence reduction.[2] Although it appears that he has exhausted all administrative remedies, the current motion includes many of the same arguments focused on deteriorating health that he made in a previous motion for relief. [Record No. 493] Within the Sixth Circuit, compassionate release can be justified by an inmate's physical condition if the defendant suffers from "unusual circumstances which could not have been reasonably foreseen by the court at the time of

---

[2] Because some of the circumstances cited by Walters overlap, the Court consolidates its analysis. Specifically, Walters identifies his significant and complex medical history, his diagnosis of incurable and progressive conditions, prescription medications that purportedly exacerbate his symptoms, healthcare mismanagement by BOP officials, a dangerous incarceration environment, diminished ability to provide self-care, indifference by BOP officials to his circumstances, and reduced opportunity for rehabilitation. [Record No. 505]

sentencing," including if he or she becomes severely ill from a terminal condition.[3] *See McCall*, 56 F.4th at *9.

In addition, United States Sentence Commission recently expanded the medical circumstances that may justify compassionate release by recognizing serious medical conditions requiring long-term care that is not being provided to a defendant while in custody. *See* U.S.S.G. Amend. 814, eff. Nov. 1, 2023. The Sentencing Commission provides, in relevant part, that extraordinary and compelling reasons may exist under the following circumstances:

> (1) Medical Circumstances of the Defendant.—
>
> > A. The defendant is suffering from a terminal illness (*i.e.,* a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.,* a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > B. The defendant is—
> >
> > > (i) suffering from a serious physical or medical condition,
> > >
> > > (ii) suffering from a serious functional or cognitive impairment, or
> > >
> > > (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[3] District courts have discretion to define extraordinary and compelling circumstances. *United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2020) (citations omitted). While the Court is not bound by U.S.S.G. § 1B1.13, "extraordinary and compelling" generally covers changes in a defendant's personal situation like those enumerated in the guidelines, including exceptional health, age, or family circumstances. *United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022).

    C.    The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(2)    Age of the Defendant.—

The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.[4]

Walters claims that he has "eleven new, serious medical conditions" that are part of "significant medical history of complex medical conditions that are serious and advanced." [Record No. 505]  Specifically, his asserts that his physical ailments include advanced kidney disease, psoriatic arthropathy, osteoarthritis, macular degeneration, cardiac arrythmia, chronic obstructive pulmonary disease ("COPD"), seizure disorder, thyroid disorder, Vitamin D deficiency, sleep apnea, gastroesophageal reflux disease ("GERD"), constipation, and disorder of bone density and structure.  [*Id.*] Three others (rheumatoid arthritis, lupus, and a ventral hernia) are allegedly unresolved despite medical officials' conclusions otherwise.[5]  Although the medical conditions from which Walters suffers are undoubtedly serious, none rise to the level of extraordinary and compelling under the previously mentioned standard.

---

[4]    United States Sentencing Comm'n, *2023 Amendments to the Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

[5]    The undersigned in not in a position to determine whether Walters rightfully challenges the "resolution" of three medical conditions despite medical officials' conclusions that they have been fully addressed.  The Court's conclusions are based on arguments in the record that none of the conditions pose an imminent life-threatening risk that would compel reducing Walters' sentence under prevailing law within the Sixth Circuit.

As the government notes, "Walters is not suffering from a terminal illness, nor is he suffering from a serious physical or medical condition from which he will not recover that diminishes his ability to provide self-care within a correctional environment." [Record No. 507] Further, the United States reviewed Walters' records from the BOP and concluded that the evidence contained within does not support his claims. [*Id*.] Indeed, a relevant portion of Walters' medical records were filed in the record and confirm that he does not meet the legal threshold that would justify his release because he does not suffer from an end-stage or terminal medical condition, or a long-term condition that cannot be treated while in BOP custody.[6] [Record No. 509]

Aside from the litany of medical conditions from which Walters allegedly suffers, he cites medical "record manipulation, incompetence, and malfeasance" by BOP staff in managing his conditions and treating his pain. [*Id*.] Walters first points to a cardiac event suffered in early 2021 as evidence of BOP's inadequate management of his healthcare. [Record No. 505] He claims that it took BOP health officials until May 2, 2023, to determine that he suffered from cardiac arrythmia after visiting the medical unit multiple times in the intervening period. [*Id*.] Although Walters claims that an "outside provider" determined he has multiple cardiac conditions and that BOP officials have denied "access to providers," there is no proof in the record to support this assertion. [*Id*.] Further, Walters claims that BOP officials were "dismissive" about symptoms that were ultimately diagnosed as COPD and

---

[6]   Walters sought leave to file exhibits in the record and reply to the government's motion in opposition. [Record No. 511] However, the undersigned concluded that additional information would not be necessary to resolve his instant motion.

sleep apnea, citing a subsequent delay in receiving the necessary medical equipment necessary to treat these issues. [*Id*.]

Beyond the delay in diagnosing his cardiac-related issues, Walters claims that BOP health officials discovered a cyst on his left kidney, nearly 50 percent of the organ's size, through an ultrasound April 27, 2022. [*Id*.] As evidence that BOP officials have mismanaged his healthcare, Walters contends that medical officials "never told him about the cyst" and that he discovered the cyst only by requesting his own medical records. [*Id*.] Walters broadly claims that BOP falsified his records without providing further detail, explaining only that BOP officials observed over time that his kidney disease has "improved." [*Id*.] But as the government noted, "Walters followed up on his chronic kidney disease where it was discussed that he was previously stage III, but it has now improved with the current regimen." [Record No. 509; Exhibit 2: BOP Health Services Clinical Encounter Record on March 13, 2023; Exhibit 3a-b: Lab results (evidencing improvements; samples collected over a 6-month span)].

The Court notes that the government's brief fails to explain when BOP medical officials discovered Walters' kidney cyst or whether they appropriately relayed their ultrasound discovery to him at all. However, the undersigned is satisfied that Walters' continuing encounters with health officials at his BOP facility "demonstrate he is receiving continuing care for his chronic conditions and even new complaints," including from medical specialists. [Record No. 507]

Next, Walters argues that health officials have mismanaged his prescription medications at USP Terre Haute, claiming that he is overprescribed. He contends that he is currently taking between eighteen and twenty-four medications that contribute to his poor health, combine to create adverse reactions, and demonstrate generally that BOP officials

-7-

cannot adequately manage his myriad medical conditions. [Record 505] Walters claims that several prescriptions were "abruptly" halted after a holistic medical evaluation in early August 2023, including some medications whose labels caution against sudden discontinuation. [*Id.*] The government's brief also fails to address this claim and the records filed as exhibits in the record do not shed any useful light on the issue. While mismanagement of an inmate's medications does not rise to the level of an extraordinary and compelling reason to justify a sentence reduction, the undersigned emphasizes that it is incumbent upon BOP health officials to balance the defendant's complex medical needs, including a slate of prescriptions designed to treat a wide variety of conditions, in a careful and deliberate manner.

Conversely, it appears that Walters has refused certain medical treatments recommended by health officials. For example, Walters has refused "narcotic pain management, a colonoscopy, and other medical interventions." [Record No. 507] And on two occasions, Walters has failed to attend appointments at the rheumatology clinic. [*See* Record No. 509; Exhibit 6: BOP Health Services Clinical Encounter Administrative Notes.] While Walters may refuse medical treatment, his claim of inadequate medical care is undermined by such refusals.

Walters also argues that the BOP has denied a variety of medical accommodations requests in the past year without explanation. In general, he argues that "Health Services is just managing [his] decline, not treating [him]." [Record No. 505] For example, on April 19, 2022, Walters purportedly "asked for gloves to dig impacted feces out of his rectum, a trapeze due to the hernia and joint relief for arthritis in addition to seven various other requests". [*Id.*] But to treat constipation, Walters allegedly was given "a prescription for an increased dose of lactulose to remedy his complaints," not the gloves he requested. [Record No. 507] Separately,

one condition that Walters contends has not been resolved—a ventral hernia—is allegedly the result of BOP staff at the United States Penitentiary in Beaumont, Texas, strapping him "to a gurney during a severe seizure." [Record No. 505] According to Walters, "[t]he hernia is the size of at least a softball and remains today." [Record No. 505] Walters claims that "staff refuse a trapeze that would assist [him] in and out of bed," forcing him to rely upon bedsheets tied together as makeshift. [*Id.*] But the United States claims that BOP records tell a different story.

Contrary to Walters' claims that BOP routinely denies him medical accommodations that diminish his ability for self-care, Walters allegedly "has been provided with medical devices and equipment when deemed medically necessary, including "eyeglasses, a cane, a hernia belt, modified clothing, a C-pap machine, and (more recently) a wheelchair." [*See* Record No. 509; Exhibit 4: BOP Health Services Devices and Equipment Record.] But for an unknown reason, Walters denied a hernia belt three times. [Record No. 507][7]

Without diminishing the seriousness of Walters' health challenges, the Court notes that he allegedly attempted to manipulate the accommodations process to improve his chances of compassionate release. The United States reports that, while discussing his complaints with the Clinical Director at USP Terre Haute, Walters stated that "his lawyer told him to ask for all these things because it would make his case look better for a compassionate release." [Record No. 509; Exhibit 5: BOP Health Services Clinical Encounter on April 4, 2023]. It is unclear whether Walters believed making extensive accommodations requests would inevitably cause

---

[7] *Id.*  While the Court does not speculate on the reason for Walters' refusal, it cannot make determinations about the devices, equipment, or procedures medically necessary for treating an individual patient—only that BOP is responsive to an inmate's request for medical care.

-9-

BOP to fall short, thereby building a case that USP Terre Haute could not reasonably provide the care he requires. That, however, is the perception. Regardless of Walters' intentions, the evidence points in the other direction, indicating that BOP has sufficiently attempted to accommodate his complex medical needs.

Finally, Walters contends that his medical needs prevent him from participating in rehabilitative programs. The Sixth Circuit has repeatedly held that a defendant's post-conviction rehabilitation does not render him eligible for compassionate release. *See McCall*, 56 F.4th at 1061 ("[R]ehabilitation . . . cannot by itself justify a sentence reduction."); *United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020); *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *4 (E.D. Ky. Dec. 29, 2020); U.S.S.G. § 1B1.13 cmt. n. 3 ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."). Although defendants are expected to take advantage of BOP programming, a defendant is not entitled to participate, and the Court is unaware of any requirement for BOP to modify its programs to fit a particular defendant's needs. Surely then Walters' inability to enroll in offered programs is immaterial to its "extraordinary and compelling" analysis.

Walters' deteriorating health would seem to be caused, in part, by the natural aging process which poses challenges to BOP officials charged with managing his medical care. However, he fails to identify any cognizable rationale to justify a sentence reduction on the premise that incarceration precludes him from receiving adequate treatment. Without a diagnosed terminal or end-stage illness, a long-term condition requiring care that BOP cannot provide, or a credible claim that BOP officials disregarded his medical needs on a negligent

level, the undersigned concludes that no extraordinary and compelling circumstance merits granting the relief Walters seeks.

### IV.  18 U.S.C. § 3553(a) Factors

Even if Walters had presented an extraordinary and compelling reason justifying a sentence reduction, granting his motion would be denied as inconsistent with relevant statutory sentencing factors.[8] Under 18 U.S.C. § 3553(a)(1)-(2), courts consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Walters was a major drug supplier to the Eastern District of Kentucky who transported a significant quantity of controlled substances across state lines from Michigan. [Record No. 445, ¶ 5] Once in possession of the substances, he distributed them from a tattoo parlor that he operated. [*Id*. at ¶ 14] As the government emphasizes, "Walters admitted that he participated in the distribution of approximately 10,000 oxycodone 30 mg. tablets." [*Id*. at ¶ 14] He then

---

[8]  Walters claims that the § 3553(a) factors favor granting his motion. He also cites the prospect of relief under 18 U.S.C. § 3142(g). However, the latter applies only to defendants seeking to avoid pre-trial detention—not those convicted of an offense and serving a term of incarceration.

wire-transferred proceeds back to Michigan. [*Id.* at ¶ 9] And during the execution of a search at the tattoo parlor on March 21, 2023, agents also located two firearms attributed to the defendant. [Record No. 289]

Next, aside from his instant offense, Walters has an extensive and dangerous criminal history. He has been convicted of assault, battery, attempted possession and possession of controlled substances, assault with a deadly weapon, trafficking controlled substances while in possession of a handgun, use and possession of drug paraphernalia, traffic offenses, and persistent felony offender charges. [Record No. 445] In fact, Walters is a career offender based on three prior convictions for violent or serious felony drug offenses. [*Id.*] At the time of sentencing, he had a Total Offense Level of 35 and ten criminal history points, placing him in Criminal History Category VI.[9] [*Id.*] His disciplinary history as an inmate likewise counsels against early release: Walters' record indicates that has misused medication and engaged in group demonstration. [Record No. 509; Exhibit 7: Inmate Discipline Data]

Finally, Walters argues that it is "not unreasonable" for the Court to reduce his sentence based on his myriad health challenges. He notes that he has served more than half of his term and argues that "the BOP calculates an additional elderly offender two-thirds release date" in 2026. But the existence of serious medical issues that BOP is treating does not justify a sentence reduction. Despite the health challenges that Walters now faces, his record suggests that he remains a serious offender. And it justifies preserving his current sentence of incarceration based on his history and characteristics, as well as to protect the public while

---

[9]   This led to a guideline range for Walters of 292 to 365 months. However, the sentencing judge granted his motion for a variance, reducing his sentence to 240 months' incarceration. [Record No. 437]

providing adequate punishment for his offenses. The Court is convinced that the sentence imposed of 240 months' incarceration remains sufficient but not greater than necessary to serve the purposes of § 3553(a).

V. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows

1. Defendant Walters' *pro se* motion for compassionate release [Record No. 505] is **DENIED**.

2. Defendant Walters' *pro se* motion for leave to submit a reply and to submit supporting documents [Record Nos. 511 and 512] are **DENIED**.

Date: January 3, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky